The CITY OF RIVERSIDE, Appellee,

v.

The STATE of Ohio, Appellant.

[Cite as *Riverside v. State*, 190 Ohio App.3d 765, 2010-Ohio-5868.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–126.

Decided Dec. 2, 2010.

768

770

Altick & Corwin Co., L.P.A., and Dalma C. Grandjean, for appellee.

Richard Cordray, Attorney General, and Jeannine R. Lesperance, for appellant.

Schottenstein, Zox & Dunn Co., L.P.A., Stephen L. Byron, Rebecca K. Schaltenbrand, and Stephen J. Smith; and John Gotherman, for amici curiae the Ohio Municipal League and the National League of Cities.

Lance Freeman, William E. Hunt, Acting United States Attorney, John A. DiCicco, Gilbert S. Rothenberg, and Jonathan S. Cohen; Kathleen E. Lyon, for amicus curiae the United States of America.

FRENCH, Judge.

{¶ 1} Defendant-appellant, the state of Ohio, appeals the Franklin County Court of Common Pleas' entry of summary judgment in favor of plaintiff-appellee, the city of Riverside, declaring R.C. 718.01(H)(11) unconstitutional. For the following reasons, we reverse.

{¶ 2} On August 22, 2008, the city filed a complaint in the Franklin County Court of Common Pleas for a declaratory judgment that R.C. 718.01(H)(11) is unconstitutional. The city alleged that R.C. 718.01(H)(11) "is contrary to 4 U.S.C. §§ 105 et seq. (commonly referred to as the Buck Act), the Equal Protection Clauses of both the United States and Ohio Constitutions, and the Ohio Constitution's 'one-subject rule.'" The complaint delineated four claims for relief, each based on one of the asserted grounds for invalidating R.C. 718.01(H)(11), but sought a single type of relief—a declaration that that statute is unconstitutional and therefore void.

{¶ 3} The city moved for summary judgment, arguing that this case presents only questions of law and urging the trial court to declare R.C. 718.01(H)(11) "invalid and unconstitutional because it is preempted by federal law, violates Ohio's one-subject rule, and violates the Equal Protection Clauses of the state and federal constitutions." The state agreed with the city that the dispositive issues are exclusively legal, but argued that the city failed to establish the unconstitutionality of R.C. 718.01(H)(11) under any theory. Although the state did not file a cross-motion for summary judgment, it asserted that it was entitled to judgment in its favor because the constitutionality of R.C. 718.01(H)(11) was the sole matter before the trial court.

{¶ 4} The General Assembly enacted R.C. 718.01(H)(11) as part of Am.Sub. H.B. No. 119, the 2008–2009 biennial budget bill. R.C. 718.01(H) provides that a municipal corporation may not tax the following:

(11) Beginning August 1, 2007, compensation paid to a person employed within the boundaries of a United States air force base under the jurisdiction of the United States air force that is used for the housing of members of the United States air force and is a center for air force operations, unless the person is subject to taxation because of residence or domicile. If the compensation is subject to taxation because of residence or domicile, municipal income tax shall be payable only to the municipal corporation of residence or domicile.

The statute precluded the city from taxing the income of nonresident civilian employees and contractors working at the Wright–Patterson Air Force Base, parts of which are located within the city.

{¶ 5} After hearing oral arguments, the trial court issued a decision granting the city's motion for summary judgment. The trial court addressed each of the city's arguments and concluded that R.C. 718.01(H)(11) is unconstitutional because it is preempted by 4 U.S.C. 105 et seq. (the "Buck Act") and violates Ohio's one-subject rule. With respect to the city's equal protection argument, however, the court concluded that summary judgment was inappropriate. The court stated that the record contained insufficient facts to determine whether the city had standing to assert an equal protection claim. Nevertheless, discussing the city's

equal protection argument as if standing existed, the court also stated, "While * * * in a full hearing with appropriate evidence being presented, it is possible that the State's argument on equal protection [asserting a rational basis for the statute] would fail, this court cannot say that summary judgment should be granted to [the city] on this issue." Thus, the trial court did not finally decide the merits of the city's equal protection challenge or the city's standing to maintain that challenge. The decision states: "[T]he Motion for Summary Judgment is sustained as to the Buck Act and One Subject arguments, and is overruled on the equal protection argument. As a result, R.C. 718.01(H)(11) is unconstitutional."

{¶ 6} The trial court's subsequent judgment entry states:

[T]he Court hereby enters judgment in favor of plaintiff City of Riverside and against defendant State of Ohio, and declares as follows:

1. [R.C. 718.01(H)(11)] is preempted by 4 U.S.C. § 106(a) (the "Buck Act"), and is therefore unconstitutional, void, and of no legal effect; and

2. [R.C. 718.01(H)(11)] violates Article II, Section 15(D), of the Ohio Constitution (the "one-subject" rule), and is therefore unconstitutional, void, and of no legal effect.

There being no just reason for delay, this is a final judgment entry as to the First Claim for Relief and Fourth Claim for Relief set forth in the Complaint.

The Court reserves judgment on the Second Claim for Relief and Third Claim for Relief, having found that there are genuine issues of material fact as to the claims of plaintiff City of Riverside that [R.C. 718.01(H)(11) ] violates the Equal Protection clauses of the United States and the Ohio Constitutions.

The judgment entry is stamped "Final Appealable Order" and contains a case-termination stamp.

{¶ 7} The state filed a timely notice of appeal and assigns the following as error:

Assignment of Error No. 1: The trial court erred in holding that R.C. 718.01(H)(11), which prohibits a municipal corporation from taxing compensation paid to a person employed within the boundaries of a United States air force base unless that person is subject to such tax because of a residence or domicile, is preempted by the "Buck Act," 4 U.S.C. § 105 *et seq.*

Assignment of Error No. 2: The trial court erred in holding that R.C. 718.01(H)(11) was invalidly enacted as a "manifestly gross and fraudulent violation" of Ohio's "One Subject Rule" found at *Section 15(D), Article II, Ohio Constitution.*

Assignment of Error No. 3: The trial court erred in holding that the City of Riverside would have standing to challenge R.C. 718.01(H)(11) under the Equal

Protection Clauses of the Ohio and United States Constitutions if it shows on remand that the class of people whose rights are affected by the unequal treatment suffer a "hindrance" which prevents them from seeking relief.

[1, 2] {¶ 8} Before addressing the state's assignments of error, we first consider a jurisdictional issue not raised by either party, namely whether the trial court's judgment entry constitutes a final, appealable order. An appellate court may raise the jurisdictional question of whether an order is final and appealable sua sponte and must dismiss an appeal that is not taken from a final, appealable order. *Englert v. Nutritional Sciences, L.L.C.*, 10th Dist. No. 07AP-305, 2007-Ohio-5159, 2007 WL 2812985, ¶ 5, citing *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 87, 541 N.E.2d 64; *Epic Properties v. OSU LaBamba, Inc.*, 10th Dist. No. 07AP–44, 2007-Ohio-5021, 2007 WL 2773846, ¶ 10; *In re Dissolution of Ohio Queen Breeders*, 10th Dist. No. 08AP–373, 2008-Ohio-5113, 2008 WL 4444802, ¶ 7.

■ {¶ 9} Section 3(B)(2), Article IV of the Ohio Constitution limits this court's jurisdiction to the review of final orders. A final order "is one disposing of the whole case or some separate and distinct branch thereof." *Lantsberry v. Tilley Lamp Co.* (1971), 27 Ohio St.2d 303, 306, 56 O.O.2d 179, 272 N.E.2d 127. A trial court's order is final and appealable only if it satisfies the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Denham v. New Carlisle* (1999), 86 Ohio St.3d 594, 596, 716 N.E.2d 184, citing *Chef Italiano*, 44 Ohio St.3d at 88, 541 N.E.2d 64. R.C. 2505.02(B) sets forth categories of final orders, and Civ.R. 54(B) provides as follows:

When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Thus, in multiple-claim or multiple-party actions, if the court enters judgment as to some, but not all, of the claims and/or parties, the judgment is a final, appealable order only upon the express determination that there is no just reason for delay. *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1989), 44 Ohio St.3d 17, 22, 540 N.E.2d 266; Civ.R. 54(B).

■ {¶ 10} When determining whether a judgment or order is final and appealable, an appellate court engages in a two-step analysis. First, we must determine whether the order is final within the requirements of R.C. 2505.02. Second, if the order satisfies R.C. 2505.02, we must determine whether Civ.R. 54(B) applies and, if so, whether the order contains a certification that there is no just reason for delay. *Gen. Acc. Ins. Co.* at 21.

■ {¶ 11} To constitute a final order, an order must fit into one of the categories set forth in R.C. 2505.02(B). Pursuant to R.C. 2505.02(B)(1) and (2), both "[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment" and "[a]n order that affects a substantial right made in a special proceeding" are final orders. A declaratory-judgment action is a special proceeding, and an order in a declaratory-judgment action that affects a substantial right qualifies as a final order under R.C. 2505.02(B)(2). *Gen. Acc. Ins. Co.* at 22. A substantial right is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). It involves the notion of a right that will be protected by law. *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 94, 540 N.E.2d 1381; *Gen. Acc. Ins. Co.* at 21.

■ {¶ 12} The trial court's judgment falls solidly within R.C. 2505.02. This action, in which the city sought only declaratory relief, is a special proceeding, and the trial court's judgment, declaring R.C. 718.01(H)(11) unconstitutional, unquestionably affects a substantial right. Additionally, the trial court adequately addressed all of the parties' rights and obligations with respect to the constitutionality of R.C. 718.01(H)(11) by declaring the statute facially unconstitutional and void. See *Dutch Maid Logistics, Inc. v. Acuity*, 8th Dist. No. 86600, 2006-Ohio-1077, 2006 WL 562168, ¶ 10, citing *Accent Group, Inc. v. N. Randall*, 8th Dist. No. 83274, 2004-Ohio-1455, 2004 WL 584315 ("When a trial court enters a judgment in a declaratory judgment action, the order must declare all of the parties' rights and obligations in order to constitute a final, appealable order"). Thus, the trial court's judgment, in effect, determined the action and prevented a judgment in favor of the state.

■ {¶ 13} The fact that the trial court based its entry of summary judgment on fewer than all of the alternate grounds argued by the city does not strip the trial court's judgment of finality. See *Young v. Univ. of Akron*, 10th Dist. No. 06AP–1022, 2007-Ohio-4663, 2007 WL 2633364 (reviewing entry of summary judgment based on discretionary immunity where trial court did not address alternative comparative-negligence argument); *Roark v. Medmarc Cas. Ins. Co.*, 9th Dist. No. 07CA009146, 2007-Ohio-7049, 2007 WL 4554279 (reviewing summary judgment based on a legal presumption of prejudice where trial court did not

address coverage defenses asserted as alternative grounds for summary judgment); *Orvets v. Natl. City Bank, Northeast* (1999), 131 Ohio App.3d 180, 722 N.E.2d 114.

{¶ 14} Our inquiry next involves determining whether Civ.R. 54(B) applies. Because this action involves claims by a single plaintiff against a single defendant, Civ.R. 54(B) applies only if the trial court rendered judgment on fewer than all the claims asserted. Although the city's complaint requested only a single form of relief, a declaration that R.C. 718.01(H)(11) is unconstitutional, the city pleaded its grounds for that declaration as separate claims for relief. The question of whether an order is a final, appealable order, however, "must be determined by the effect the order has upon the pending actions." *Sys. Constr., Inc. v. Worthington Forest, Ltd.* (1975), 46 Ohio App.2d 95, 96, 75 O.O.2d 79, 345 N.E.2d 428. A judgment that determines a claim in an action and has the effect of rendering moot all other claims in the action is a final, appealable order, pursuant to R.C. 2505.02, and Civ.R. 54(B) is not applicable. *Wise v. Gursky* (1981), 66 Ohio St.2d 241, 243, 20 O.O.3d 233, 421 N.E.2d 150.

{¶ 15} By declaring R.C. 718.01(H)(11) unconstitutional based on the city's preemption and one-subject-rule theories, the trial court determined the city's claim for a declaratory judgment in its entirety and granted complete relief. Regardless of the merits of the city's equal protection argument, there remains no further relief to be granted. Whether R.C. 718.01(H)(11) is unconstitutional for one reason or for three reasons, the result is the same. Thus, the question of whether R.C. 718.01(H)(11) violated the state and federal equal protection clauses was rendered moot by the trial court's conclusion that the statute was unconstitutional on other grounds. The trial court's judgment determined the city's claim and prevented a judgment in favor of the state regardless of whether the statute also violates equal protection. Therefore, Civ.R. 54(B) is inapplicable.

{¶ 16} Even if, despite the trial court's grant of complete relief, we viewed the trial court's refusal to grant summary judgment on the city's equal protection theories as leaving claims pending, the trial court satisfied Civ.R. 54(B). Indeed, the trial court expressly found that there was no just reason for delay with respect to its holdings that R.C. 718.01(H)(11) is unconstitutional based on conflict with the Buck Act and violation of Ohio's one-subject rule. Accordingly, we conclude that the trial court's judgment entry is a final, appealable order, and we now turn to the merits of the state's appeal.

{¶ 17} The trial court disposed of this case by summary judgment. We review a summary judgment de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. When an appellate

court reviews a trial court's disposition of a summary-judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765; *Brown* at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327.

{¶ 18} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 19} By its first assignment of error, the state argues that the trial court erred by holding that the Buck Act preempts R.C. 718.01(H)(11). We agree.

{¶ 20} The Supremacy Clause of the United States Constitution provides, "This Constitution, and the Laws of the United States * * * shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Clause 2, Article VI, United States Constitution. That clause grants Congress the power to preempt state laws. *Norfolk S. Ry. Co. v. Bogle,* 115 Ohio St.3d 455, 2007-Ohio-5248, 875 N.E.2d 919, ¶ 6; *Jenkins v. James B. Day & Co.* (1994), 69 Ohio St.3d 541, 544, 634 N.E.2d 998, citing *In re Miamisburg Train Derailment Litigation* (1994), 68 Ohio St.3d 255, 259, 626 N.E.2d 85.

{¶ 21} Preemption may be either express or implied; it need not be explicitly stated, but may be implicit in an act's structure and purpose. *Fid. Fed. S. & L. Assn. v. de la Cuesta* (1982), 458 U.S. 141, 152–153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664. For example, Congress may implicitly preempt an entire field of activity if an intent to preempt can be inferred "from a 'scheme of federal regulation * * * so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal

system will be assumed to preclude enforcement of state laws on the same subject.'" (Ellipsis and brackets sic.) *English v. Gen. Elec. Co.* (1990), 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65, quoting *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447. Implied preemption also occurs when a state law actually conflicts with a federal law, so that it is impossible to comply with the requirements of both, or where the state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id., quoting *Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581. Thus, preemption can occur in any of three ways: by express preemption, by preemption of the field, and by preemption due to conflict. *Norfolk* at ¶ 7. Here, we are concerned only with conflict preemption.

{¶ 22} The United States Supreme Court recently acknowledged two "cornerstones" of preemption jurisprudence, as follows:

> First, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). * * * Second, "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated * * * in a field which the States have traditionally occupied,' * * * we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" [Id.] (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

(Citations omitted.) *Wyeth v. Levine* (2009), —— U.S. ——, 129 S.Ct. 1187, 1194–1195, 173 L.Ed.2d 51. The Supreme Court has framed preemption analysis as asking whether Congress intended to exercise its constitutionally delegated authority to set aside state laws. See *Barnett Bank of Marion Cty., N.A. v. Nelson* (1996), 517 U.S. 25, 30, 116 S.Ct. 1103, 134 L.Ed.2d 237. The Supreme Court of Ohio has likewise recognized that the critical question in preemption analysis is whether Congress intended that state law be superseded. See *In re Miamisburg Train Derailment Litigation,* 68 Ohio St.3d at 260, 626 N.E.2d 85, citing *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407.

{¶ 23} Here, the trial court concluded that R.C. 718.01(H)(11) conflicts with the plain and unambiguous language of 4 U.S.C. 106(a), which provides:

> No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and

collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.

As stated above, R.C. 718.01(H)(11) prohibits a municipality from taxing "compensation paid to a person employed within the boundaries of [the base], unless the person is subject to taxation because of residence or domicile." In essence, that statute precludes the city from levying a commuter tax—a tax on income earned within the city by nonresidents—on persons employed on those portions of the base within the city limits. The trial court concluded that the unambiguous language of the Buck Act "clearly prohibits" the effect of R.C. 718.01(H)(11), creating "a classic case of conflict preemption."

{¶ 24} The state and the United States, as amicus curiae, argue that there is no conflict between the Buck Act and R.C. 718.01(H)(11) because the Buck Act merely ceded jurisdiction to the states, thus removing a federal, jurisdictional barrier preventing states and local taxing authorities from taxing income earned by federal employees residing or working within a federal area. The city, on the other hand, ascribes a much broader purpose and argues that Congress intended the Buck Act to equalize tax liability between similarly situated federal employees who work or reside in federal areas and those who work or reside outside of federal areas. The city maintains that the second clause of 4 U.S.C. 106(a), equalizing the states' jurisdiction to tax on or off federal areas, is simply the mechanism by which Congress accomplished its broader purpose. The city asserts that the first clause of 4 U.S.C. 106(a) limits the second clause's cession of jurisdiction to the states by prohibiting any exclusion from tax liability because of a taxpayer's residence or work within a federal area. In evaluating these arguments, we look both to the language of the Buck Act and to the historical context and legislative history surrounding its enactment.

{¶ 25} In 1939, a year before the passage of the Buck Act, Congress enacted the Public Salary Tax Act ("PSTA") to eliminate the need for extensive litigation to determine whether the federal government's sovereign immunity prevented states from taxing federal employees' income. *United States v. Denver* (D.Colo. 1983), 573 F.Supp. 686, 691, fn. 9, citing S.Rep. No. 112, 76th Cong., 1st Sess. 1–3 (1939). By the PSTA, "[t]he United States consent[ed] to the taxation of pay or compensation for personal service as an officer or employee of the United States * * * by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation." 4 U.S.C. 111(a). The PSTA codified the United States Supreme Court's holding in *Graves v. People of State of New York ex rel. O'Keefe* (1939), 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, that the intergovernmental-tax-immunity doctrine did not prevent a state from imposing a nondiscriminatory tax

upon the salaries of federal employees. *Jefferson Cty., Alabama v. Acker* (1999), 527 U.S. 423, 437, 119 S.Ct. 2069, 144 L.Ed.2d 408.

{¶ 26} Despite the PSTA's consent to taxation, the income of certain federal employees remained beyond state and local taxing authorities' jurisdiction because of where those employees lived or worked. Because the United States retained exclusive jurisdiction over federal enclaves by virtue of Clause 17, Section 8, Article I, United States Constitution, the states had no power to levy taxes in those areas. *Denver,* 573 F.Supp. at 691. Thus, "[u]nder [the PSTA] a State [was] permitted to tax the compensation of officers and employees of the United States when such officers and employees reside[d] or [were] domiciled in that State but [was] not permitted to tax the compensation of such officers and employees who reside[d] within Federal areas within such State." S.Rep. No. 1625, 76th Cong., 3d Sess. 3 (1940). "For example, a naval officer who [was] ordered to the Naval Academy for duty and [was] fortunate enough to have quarters assigned to him within the Naval Academy grounds [was] exempt from the Maryland income tax because the Naval Academy grounds are a Federal area over which the United States [had] exclusive jurisdiction; but his less fortunate colleague, who [was] also ordered there for duty and rent[ed] a house outside the academy grounds because no quarters [were] available inside, [was required to] pay the Maryland income tax on his Federal salary." Id. Similarly, a state could not tax income or receipts from transactions occurring or services performed in an area within the state over which the United States retained exclusive jurisdiction. Id.

{¶ 27} The Buck Act was passed on October 9, 1940, as Public Law No. 819, entitled "AN ACT [t]o *permit* the States to *extend* their sales, use, and income taxes to persons residing or carrying on business, or to transactions occurring, in Federal areas, and for other purposes." (Emphasis added.) 54 Stat. 1059, 76th Cong., 3d Sess. Congress intended the act to eliminate the disparity that arose after the passage of the PSTA because of the states' lack of legislative jurisdiction over federal enclaves. *Denver,* 573 F.Supp. at 691; S.Rep. No. 1625 (indicating that the income tax provision was intended to eliminate "an inequity which has arisen under the [PSTA]"). That disparity or inequity arose as a result of continuing, exclusive federal jurisdiction over federal areas, curtailing the effect of the PSTA's consent for state and local taxation of federal employees' income. Concurring in part and dissenting in part in *Jefferson Cty.,* Justices Breyer and O'Connor explained, 527 U.S. at 456, 119 S.Ct. 2069, 144 L.Ed.2d 408, that "[t]he Buck Act seeks to prevent a person who lives or works in a federal area from making a certain kind of legal defense to taxation, namely, the defense that the State lacks jurisdiction to impose an income tax upon a person who lives or works in such an area."

{¶ 28} The report of the Senate Committee on Finance offers additional insight into the intent and purpose behind the Buck Act. S.Rep. No. 1625. The report first discusses Section 1(a), codified at 4 U.S.C. 105(a), which nearly mirrors 4 U.S.C. 106(a), but concerns sales and use taxes. Both 4 U.S.C. 106(a) and 4 U.S.C. 105(a) include similar first clauses providing that "[n]o person shall be relieved from liability for" taxes based on relationship to a federal area. In identical second clauses, both sections specify that "such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area." The report states that section 105(a) removes an exemption from duly levied sales or use taxes "claimed on the ground that the Federal Government has exclusive jurisdiction over [Federal areas]," but "will not affect any right to claim any exemption from such taxes on any ground other than that the Federal Government has exclusive jurisdiction over the area where the transaction occurred." The Finance Committee explained that the identical second clauses in section 105(a) and 106(a) were "deemed to be necessary so as to make it clear that the State or taxing authority had power to levy or collect any such tax in any Federal area within the State by the ordinary methods employed outside such areas, such as by judgment and execution thereof against any property of the judgment-debtor."

{¶ 29} There is no question that under the Buck Act, exclusive federal jurisdiction no longer precludes states or local taxing authorities from levying or collecting income taxes from federal employees, whether or not they reside within a federal area and whether or not the income was received from transactions occurring or services performed in a federal area. Indeed, R.C. 718.01(H)(11) implicitly recognizes the effect of the Buck Act because it permits municipal taxation of income earned by city residents on the base, which was made possible only by 4 U.S.C. 106(a). Despite having jurisdiction and power to levy and collect taxes in federal areas within the state to the same extent as though the areas were not federal areas, however, the General Assembly determined, as a matter of policy, to prohibit municipal taxation of nonresidents employed on the base. The question thus resolves to whether the Buck Act precludes the state's policy determination, as expressed in R.C. 718.01(H)(11).

{¶ 30} Municipal taxing power in Ohio is derived from the Ohio Constitution. Section 3, Article XVIII, the Home Rule Amendment, confers sovereignty upon municipalities to "exercise all powers of local self-government," including the power of taxation. See State ex rel. Zielonka v. Carrel (1919), 99 Ohio St. 220, 227, 124 N.E. 134. The Ohio Constitution also grants the General Assembly the power to limit municipal taxing authority. See Section 13, Article XVIII, Ohio Constitution ("Laws may be passed to limit the power of municipali-

ties to levy taxes and incur debts for local purposes"); Section 6, Article XIII, Ohio Constitution. It is undisputed that the General Assembly can, and has, enacted specific prohibitions on municipal taxation of certain types of income. For example, in R.C. 718.01(H)(1) through (10), the General Assembly has precluded municipal taxation of certain categories of income, including military pay, income of certain nonprofit organizations, compensation paid to precinct election officials, and compensation paid to certain transit authority employees. "[T]he Constitution presumes that both the state and municipalities may exercise full taxing powers, *unless the General Assembly has acted expressly to preempt municipal taxation,* pursuant to its constitutional authority to do so." (Emphasis added.) *Cincinnati Bell Tel. Co. v. Cincinnati* (1998), 81 Ohio St.3d 599, 607, 693 N.E.2d 212.

{¶ 31} The first clause of 4 U.S.C. 106(a), which states that "[n]o person shall be relieved from liability for any income tax levied by any State, or any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area," contemplates a taxpayer seeking relief from tax liability and presupposes the existence of a properly levied and otherwise enforceable tax. Here, however, no taxpayer is seeking relief from tax liability. See *Jefferson Cty.*, 527 U.S. at 456, 119 S.Ct. 2069, 144 L.Ed.2d 408 (Breyer and O'Connor, JJ., concurring in part and dissenting in part) ("The case before us falls outside the Buck Act because no one here has asked to 'be relieved' of tax liability *'by reason of* his residing within a Federal area or receiving income from * * * services performed in such area.' § 106(a)" [emphasis sic] ). Further, because the General Assembly has exercised its constitutional authority to limit the city's taxing authority and precluded the city from levying a tax upon nonresidents employed on the base, there is no tax from which a taxpayer could claim relief. While exclusive federal jurisdiction over the base does not preclude the city from imposing an income tax, the city's authority to levy and collect taxes is subject to limitations imposed by the General Assembly, including the limitation expressed in R.C. 718.01(H)(11).

{¶ 32} The city argues that this reading of the Buck Act implicitly requires the addition of the words "unless the State determines otherwise" to the end of the first clause of 4 U.S.C. 106(a). The first clause does not, however, purport to limit state authority but, instead, precludes a taxpayer from claiming exemption from an authorized tax based on federal jurisdiction over federal areas. The city's argument overlooks the requirement of an existing "income tax levied by [a] State, or any duly constituted taxing authority therein, having jurisdiction to levy such a tax." Here, by virtue of the General Assembly's constitutional power to circumscribe the city's taxing authority, the city lacked authority to impose a

commuter tax on persons employed on portions of the base within the city limits. R.C. 718.01(H)(11) does not relieve a taxpayer of a levied tax but, instead, precludes the city from levying such a tax. While we agree that courts may not insert words into a statute under the guise of statutory interpretation, we reject the city's argument because no additional words are necessary to conclude that the Buck Act simply expanded the states' power of taxation on federal areas.

{¶ 33} We also reject the city's argument that R.C. 718.01(H)(11) recreates the situation the Buck Act was enacted to remedy. The Buck Act was enacted to remedy the lack of jurisdiction by states and local taxing authorities to levy and collect taxes on federal areas. The effect of the Buck Act was to expand the jurisdiction of state taxing authorities and to equalize the ability to tax income earned in or out of federal areas. See *Jefferson Cty. v. Acker* (C.A.11, 1996), 92 F.3d 1561, 1575, judgment vacated on other grounds, 520 U.S. 1261, 117 S.Ct. 2429, 138 L.Ed.2d 191 ("The Buck Act equalizes taxing power within and without federal areas, allowing states and localities to levy taxes within federal areas 'to the same extent and with the same effect' as without federal areas. * * * The Buck Act does not, however, affect the limits on state and local taxing power in any other way"). A state's determination to not take advantage of that jurisdiction to collect taxes does not undermine the effect of the Buck Act.

{¶ 34} The Buck Act extends to state and local taxing authorities jurisdiction to levy taxes in a federal area within its borders as though the area was not a federal area. 4 U.S.C. 105(a) and 106(a). The state's authority, including the authority to limit the taxing authority of municipalities, remains the same whether the taxes concern income earned within or outside a federal enclave. Because the state may constitutionally limit the taxing authority of municipalities outside of federal enclaves, it must necessarily retain that authority within federal enclaves under the second sentence of 4 U.S.C. 106(a). Finding no conflict between the Buck Act and R.C. 718.01(H)(11), we conclude that the trial court erred in holding that the state statute was preempted. Accordingly, we sustain the state's first assignment of error.

{¶ 35} By its second assignment of error, the state contends that the trial court erred by concluding that R.C. 718.01(H)(11) was enacted in violation of Ohio's one-subject rule, Section 15(D), Article II, Ohio Constitution, which states that "[n]o bill shall contain more than one subject, which shall be clearly expressed in its title."

{¶ 36} The one-subject rule exists to prevent the General Assembly from engaging in logrolling. *State ex rel. Dix v. Celeste* (1984), 11 Ohio St.3d 141, 142–143, 11 OBR 436, 464 N.E.2d 153. Logrolling occurs when legislators combine disharmonious proposals in a single bill to consolidate votes and pass provisions

that may not have been acceptable to a majority on their own merits. Id. "The one-subject provision attacks logrolling by disallowing unnatural combinations of provisions in acts, *i.e.*, those dealing with more than one subject, on the theory that the best explanation for the unnatural combination is a tactical one-logrolling." Id. at 143.

{¶ 37} The one-subject rule is mandatory. *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, ¶ 54. See also *Simmons–Harris v. Goff* (1999), 86 Ohio St.3d 1, 15, 711 N.E.2d 203 ("The one-subject rule is part of our Constitution and therefore must be enforced"). The Ohio judiciary's role in the enforcement of the one-subject rule, however, remains limited. *State ex rel. Ohio Civ. Serv. Emp. Assn., AFSCME, Local 11, AFL–CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 27 ("*SERB* "). To avoid interfering with the legislative process, courts afford the General Assembly great latitude in enacting comprehensive legislation and indulge every presumption in favor of the constitutionality of legislation. Id.

{¶ 38} Because the one-subject rule is directed, not at plurality, but at disunity in subject matter, " '[t]he mere fact that a bill embraces more than one topic is not fatal, as long as a common purpose or relationship exists between the topics.' " *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 496, 715 N.E.2d 1062, quoting *Hoover v. Bd. of Franklin Cty. Commrs.* (1985), 19 Ohio St.3d 1, 6, 19 OBR 1, 482 N.E.2d 575. The pivotal question is whether the various topics unite to form a single subject for purposes of Section 15(D), Article II, Ohio Constitution. *Sheward* at 497. To conclude that an act violates the one-subject rule, a court must determine that the act "includes a disunity of subject matter such that there is 'no discernable practical, rational or legitimate reason for combining the provisions in one Act.' " *SERB*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, at ¶ 28, quoting *Beagle v. Walden* (1997), 78 Ohio St.3d 59, 62, 676 N.E.2d 506. Only "a manifestly gross and fraudulent violation" of the one-subject rule will result in invalidation of an enactment. *Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, at ¶ 54.

{¶ 39} Assessment of an act's constitutionality is primarily a matter of " 'case-by-case, semantic and contextual analysis' " and is based on the particular language and subject of the act rather than extrinsic evidence of fraud or logrolling. *Cuyahoga Cty. Veterans Serv. Comm. v. State*, 159 Ohio App.3d 276, 2004-Ohio-6124, 823 N.E.2d 888 ("*CCVSC*"), quoting *Dix*, 11 Ohio St.3d at 145, 464 N.E.2d 153; *Nowak* at ¶ 71; *Akron Metro. Hous. Auth. Bd. of Trustees v. State*, 10th Dist. No. 07AP–738, 2008-Ohio-2836, 2008 WL 2390802, ¶ 19. In the context of constitutional, one-subject rules, the " 'term "subject" * * * is to be given a broad and extensive meaning so as to allow [the] legislature full scope

to include in one act all matters having a logical or natural connection.'" *Sheward,* 86 Ohio St.3d at 498, 715 N.E.2d 1062, quoting Black's Law Dictionary (6th Ed.1990). The Supreme Court of Ohio has explained as follows:

> These cases can be perceived as points along a spectrum. At one end, closely related topics unite under a narrowly denominated subject. As the topics embraced in a single act become more diverse, and as their connection to each other becomes more attenuated, so the statement of subject necessary to comprehend them broadens and expands. There comes a point past which a denominated subject becomes so strained in its effort to cohere diverse matter as to lose its legitimacy as such. It becomes a ruse by which to connect blatantly unrelated topics. At the farthest end of this spectrum lies the single enactment which endeavors to legislate on all matters under the heading of "law."

*Sheward* at 499.

{¶ 40} The state budget bill containing R.C. 718.01(H)(11) was a general appropriations bill. Consideration of appropriations bills under the one-subject rule is complicated because they encompass many items bound by the thread of appropriations, but also because the danger of riders is especially evident when a bill as important and likely of passage as an appropriations bill is concerned. *Simmons–Harris,* 86 Ohio St.3d at 16, 711 N.E.2d 203; *SERB,* 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, at ¶ 30.

{¶ 41} The state argues that R.C. 718.01(H)(11) is directly related to the means by which a municipality may generate revenue and is integrally related to the budget bill. The state maintains that R.C. 718.01(H)(11) is rationally related to and inextricably intertwined with the subject of state appropriations because tax measures, whether state or local, restrictive or permissive, are naturally related to the state budget and because it integrally relates to the budget bill's changes to local government funding. By contrast, the city argues that any connection between R.C. 718.01(H)(11) and state appropriations is too tenuous to withstand one-subject scrutiny. The trial court agreed with the city and found no rational connection between state appropriations and the city's ability to collect income taxes. We disagree.

{¶ 42} In two notable cases, the Supreme Court of Ohio has found state statutes enacted as part of appropriations bills unconstitutional based on violations of the one-subject rule. See *Simmons–Harris; SERB.* First, in *Simmons–Harris,* the Supreme Court considered the school voucher program, established as part of the biennial operating appropriations bill for fiscal years 1996–1997, Am.Sub.H.B. 117. The school voucher program, which comprised ten pages of a more than 1,000–page bill, allowed parents and students to receive scholarship funds from the state to spend on education at nonpublic schools, including

sectarian schools. Describing the school voucher program as "a significant, substantive program" and "leading-edge legislation," the court stated that the program "was in essence little more than a rider" to the appropriations bill. *Simmons–Harris,* 86 Ohio St.3d at 16, 711 N.E.2d 203. The court concluded that there was considerable and blatant disunity between the school voucher program and the vast majority of the provisions in Am.Sub.H.B. 17 and discerned no rational reason for their combination. Id. In light of those determinations, the Supreme Court held that "creation of a substantive program in a general appropriations bill violates the one-subject rule." Id. at 17.

{¶ 43} More recently, the Supreme Court determined that the inclusion in a general appropriations bill of a provision excluding employees of the Ohio School Facilities Commission ("OSFC") from the collective-bargaining process violated the one-subject rule. See *SERB.* The provision at issue in *SERB,* an amendment to R.C. 3318.31, was a single sentence of the 226–page appropriations bill. The court noted a disunity between the exclusion of OSFC employees from the collective bargaining process and other, budget-related items in the bill and rejected the state's assertion that the amendment to R.C. 3318.31 was bound with the other provisions of the act under the single subject of appropriations. The court explained as follows:

> This argument * * * stretches the one-subject concept to the point of break-ing. Indeed, SERB's position is based on the notion that a provision that impacts the state budget, even if only slightly, may be lawfully included in an appropriations bill merely because other provisions in the bill also impact the budget. Such a notion, however, renders the one-subject rule meaningless in the context of appropriations bills because virtually any statute arguably impacts the state budget, even if only tenuously.

Id. at ¶ 33. The court did not hold that the subject of appropriations is not a proper one for purposes of the one-subject rule, but concluded only that, given the disunity between the challenged provision and the budget-related items in the bill, the common connection to appropriations was too tenuous to pass constitu-tional muster. The court noted that SERB offered little guidance as to how the challenged provision would affect the state budget and that the record provided no explanation of how the provision would clarify or alter the appropriation of state funds. Therefore, the court concluded that the challenged provision violat-ed the one-subject rule.

{¶ 44} Although appropriations bills encompass many items bound by the thread of appropriations, revenues and expenditures compose the core of an appropriations bill. See *State ex rel. Ohio Roundtable v. Taft,* 10th Dist No. 02AP–911, 2003-Ohio-3340, 2003 WL 21470307, ¶ 50. In *Ohio Roundtable,* this court rejected a one-subject challenge to provisions in a budget correction bill

authorizing the state lottery commission to participate in a multistate lottery game. Based on the expectation that the new game would generate significant revenue for Ohio schools, this court reasoned that the challenged provisions maintained a sufficient common thread with the remaining provisions of the bill, which centered around appropriations and revenue. We stated, "[T]he introduction of a stream of revenue was sufficiently related to the core subject of revenues and expenditures to justify inclusion in an appropriations bill." Id. We compared *Ohio Roundtable* to *ComTech Sys., Inc. v. Limbach* (1991), 59 Ohio St.3d 96, 570 N.E.2d 1089, in which the Supreme Court held that a newly created sales tax on certain computer services and equipment, included in the biennial budget bill, did not violate the one-subject rule. Thus, provisions in appropriations bills directly related to taxation and revenue generation have survived one-subject scrutiny. See also *Solon v. Martin*, 8th Dist. No. 89586, 2008-Ohio-808, 2008 WL 519898, ¶ 22–23 (no one-subject violation where appropriations bill included drivers' license rule that was a condition of the state's receipt of federal funding).

{¶ 45} Here, the challenged provision does not generate funds for the state but instead restricts the city's ability to generate revenue, and that restriction has a direct effect on the state's funding for the city. Of particular relevance to this case is *CCVSC*, 159 Ohio App.3d 276, 2004-Ohio-6124, 823 N.E.2d 888, in which the appellants challenged provisions of 2002 Am.Sub.S.B. 261, a statewide appropriations bill, that revised procedures for county veterans service commissions. The challenged provisions amended statutes related to membership on veterans service commissions and their submission of operating budgets to boards of county commissioners and authorized certain counties to appoint additional members to the veterans service commission if the commission's budget request exceeded a certain threshold. The appellants, who alleged that the changes eliminated or severely restricted their ability to administer and fund the veterans service commission, argued that the challenged provisions related to local budget matters, not state appropriations, and therefore lacked a common purpose with other provisions in the bill. We rejected that argument, stating, Id. at ¶ 14, as follows:

Am.Sub.S.B. No. 261 creates changes to the county veterans service commissions. The subject of funding and budgeting by agencies and political subdivisions is implicated throughout the bill. County budgeting processes are necessarily affected by overall state appropriations even when a specific section of a bill relates only to budgeting of local government funds. * * * Restricting funding is as much a part of an appropriations bill as granting funds. Consequently, we conclude that [the challenged provisions] are sufficiently related to funding and budgeting to pass constitutional muster under the one-subject rule.

{¶ 46} The city attempts to diminish the state's reliance on *CCVSC* and to distinguish that case by arguing that it predates the Supreme Court's December 2004 opinions in *SERB* and *Nowak*. Nothing in those cases, however, suggests a departure from this court's analysis in *CCVSC*, based on earlier Supreme Court precedent. While *Nowak* held that the one-subject rule is mandatory, it did not alter the underlying analytical framework applied to one-subject challenges. The court stated, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, at ¶ 55, "we do not attenuate or otherwise impugn the integrity of the manifestly-gross-and-fraudulent-violation standard. * * * [O]ur holding today does nothing to change any of the principles or standards that have been developed in *Dix* and its progeny." Further, in *SERB*, the court simply concluded that the challenged provision, dealing with collective-bargaining, was too tenuously connected to appropriations to survive a one-subject challenge. Nothing in *SERB* or *Nowak* suggests an intent to overrule or limit *CCVSC* or otherwise diminishes the precedential value of that case.

{¶ 47} The First District Court of Appeals recently applied the *SERB* rationale in *Rumpke Sanit. Landfill, Inc. v. State*, 184 Ohio App.3d 135, 2009-Ohio-4888, 919 N.E.2d 826, which involved a challenge to statutory amendments enacted as part of the 2009–2010 biennial budget bill, altering the definition of a "public utility" to exclude "a person that owns or operates a solid waste facility or a solid waste transfer facility, other than a publicly owned solid waste facility or a publicly owned solid waste transfer facility."[1] The First District rejected the state's "tenuous argument that a $120 million appropriation for low-interest loans and grants to local governments for projects involving, among other things, sold-waste-disposal facilities would be affected by the revisions." Id. at ¶ 18. As it did in *SERB*, where the record was devoid of any explanation of how the statutory amendment excluding OSFC employees from the collective-bargaining process would clarify, alter, or affect the appropriation of state funds, the First District noted the absence of evidence of the effect the revisions would have on the state's budget. See also *In re Holzer Consol. Health Sys. v. Ohio Dept. of Health*, 10th Dist. No. 03AP–1020, 2004-Ohio-5533, 2004 WL 2341322, ¶ 37 (finding a one-subject violation where the challenged provision bore "no relation to the utilization of governmental resources or how budgetary funds are to be disbursed").

{¶ 48} Here, in contrast to *SERB*, *Holzer*, and *Rumpke*, the state explains that the tax exemption represents a direct limitation of the city's authority to generate revenue, and that limitation is rationally related to the budget bill's treatment of

---

1. Rumpke's status as a "public utility" was critical to its pending, separate case against Colerain Township.

state funding of local government. The budget bill contains numerous other provisions addressing the topic of local government funding, budgeting, taxation, and revenue. For example, the budget bill contains provisions authorizing certain counties to raise their lodging tax (R.C. 5739.09(A)(7)), increasing the percentage of county property taxes credited to the county's real estate assessment fund (R.C. 319.54(C)), expanding the homestead exemption to reduce local property taxes of certain taxpayers and continuing state reimbursement for those tax reductions (R.C. 4503.065 and 319.54(B)), amending an exemption from state sales tax and local use tax for motor vehicle sales to nonresidents (R.C. 5739.029), prohibiting municipalities from requiring an employer to withhold income tax from payments made to an employee on account of the employee's sickness or disability (R.C. 718.03), and amending the statute regarding municipal income taxes charged against utility companies to clarify provisions regarding notice and refunds (R.C. 5745.13 and 5745.05(B)). R.C. 718.01(H)(11), which limits the city's ability to raise revenue, is analogous to the provisions at issue in *CCVSC*, where this court noted that "[c]ounty budgeting processes are necessarily affected by overall state appropriations even when a specific section of a bill relates only to budgeting of local government funds" and that "[r]estricting funding is as much a part of an appropriations bill as granting funds." 159 Ohio App.3d 276, 2004-Ohio-6124, 823 N.E.2d 888, at ¶ 14. As in that case, we conclude that R.C. 718.01(H)(11) is sufficiently related to funding and budgeting to pass constitutional muster under the one-subject rule.

{¶ 49} The state also argues that R.C. 718.01(H)(11) is integrally related to an overhaul of local government funding undertaken by the budget bill. The budget bill altered state law governing the appropriation of state funds to benefit local governments by, in part, eliminating the Local Government Revenue Assistance Fund ("LGRAF") and changing the amount of state tax revenue credited to the Local Government Fund ("LGF") and Library and Local Government Support Fund ("LLGSF"). The effect of the budget bill was to alter the amount of revenue available for distribution by the state to local governments and to alter the process for distributing that revenue.

{¶ 50} The budget bill required tax revenues previously credited to the LGF, LGRAF, and LLGSF to be credited to the state General Revenue Fund ("GRF"). Beginning in January 2008, the director of budget and management was required to make monthly distributions from the GRF to the LGF and LLGSF, and the tax commissioner was required to distribute the money credited to the LGF to counties for further distribution to local governments within each county. Montgomery County, where the city lies, uses an approved, alternative formula to apportion LGF funds to local governments within the county. The alternative

formula uses "population weighting based on a relative per capita valuation for municipal tax duplicates."

{¶ 51} In addition to distributing LGF funds to counties, the tax commissioner was also required to distribute a portion of the LGF directly to municipalities that received direct distributions from the LGF during calendar year 2007, when approximately one-tenth of the LGF was distributed directly to municipalities that levied an income tax, in proportion to each municipality's relative municipal income tax collection compared to total municipal income tax collections. The amended provisions provide that each municipality will receive a percentage of the LGF municipal earmark equal to its portion of the total 2007 LGF and LGRAF distributions. Under the provisions enacted by the budget bill, the amount of the city's disbursement from the LGF, either directly or indirectly through Montgomery County, is affected by the amount of the city's income tax revenue. Accordingly, we agree with the state that there was a rational and legitimate reason for including R.C. 718.01(H)(11), which restricts the city's ability to generate income tax revenue, in the budget bill.

{¶ 52} Because R.C. 718.01(H)(11) relates to the single subject of state appropriations and because there are discernable practical, rational, legitimate reasons for combining the provision with the budget bill, we conclude that R.C. 718.01(H)(11) does not violate the one-subject rule. Accordingly, the trial court erred by declaring R.C. 718.01(H)(11) unconstitutional on that ground, and, for these reasons, we sustain the state's second assignment of error.

{¶ 53} The state's third and final assignment of error concerns the city's claim that R.C. 718.01(H)(11) violates the Equal Protection Clauses of the Ohio and United States Constitutions. The state contends that the trial court erred by holding that the city would have standing to maintain its equal protection challenge if it establishes that the class affected by the unequal treatment suffers a hindrance that prevents it from seeking relief.

{¶ 54} Ordinarily, a political subdivision does not receive protection from the equal protection or due process clauses vis-a-vis its creating state. *E. Liverpool v. Columbiana Cty. Budget Comm.*, 114 Ohio St.3d 133, 2007-Ohio-3759, 870 N.E.2d 705, ¶ 20, quoting *Avon Lake City School Dist. v. Limbach* (1988), 35 Ohio St.3d 118, 122, 518 N.E.2d 1190. Additionally, a political subdivision generally lacks standing to assert the rights of a third party, but an exception to that rule exists "when a claimant (i) suffers its own injury in fact, (ii) possesses a sufficiently ' "close" relationship with the person who possesses the right,' and (iii) shows some 'hindrance' that stands in the way of the claimant seeking relief." *E. Liverpool* at ¶ 22, quoting *Kowalski v. Tesmer* (2004), 543 U.S. 125, 129–130, 125 S.Ct. 564, 160 L.Ed.2d 519.

{¶ 55} After acknowledging the general rule set forth in *E. Liverpool*, the trial court proceeded to consider whether the city, which purports to assert its equal protection argument on behalf of its citizens, satisfies the three requirements for application of the stated exception. The trial court characterized the first two requirements as uncontested but stated that it could not determine, based on the facts in the record, whether the city met the third requirement. Unsatisfied that the city has standing, the court denied the city's motion for summary judgment on its equal protection claim. Nevertheless, the trial court went on to address the equal protection challenge, as if standing existed, and concluded that genuine issues of fact on the merits also precluded summary judgment. Although the trial court discussed both the city's standing to maintain an equal protection challenge and the merits thereof, the court did not decide either question. Rather, in both regards, it simply determined that genuine issues of material fact remained.

{¶ 56} On appeal, the state urges this court to determine, as a matter of law, that the city lacks standing to proceed on its equal protection claim on remand. The state contends that the city lacks an identity of interest with any group alleged to suffer from discriminatory treatment and, therefore, cannot demonstrate a sufficiently close relationship with a person who possesses the right to challenge R.C. 718.01(H)(11) on equal protection grounds. The city, on the other hand, argues that the trial court's discussion of equal protection is not properly before this court. For the following reasons, we decline to address the state's argument regarding equal protection.

{¶ 57} Only an aggrieved party, whose rights have been adversely affected, may appeal a judgment or order of a trial court. *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 161, 23 O.O. 369, 42 N.E.2d 758; *Tschantz v. Ferguson* (1989), 49 Ohio App.3d 9, 13, 550 N.E.2d 544. Appeals are allowed only to correct errors injuriously affecting the appellant. *Ohio Contract Carriers Assn.*, syllabus. Here, although the state opposed the city's motion for summary judgment, it did not file a cross-motion for summary judgment, based either on the merits or on the city's alleged lack of standing. Having not moved for summary judgment, the most the state could expect from the trial court was denial of the city's motion for summary judgment. Because the trial court denied the city's motion for summary judgment with respect to the city's equal protection challenge, the state is not an aggrieved party in that regard.

{¶ 58} Were we examining the denial of the city's motion for summary judgment on its equal protection claim in isolation, there would be no final, appealable order as the trial court's ruling does not prevent the state from obtaining a final judgment in its favor. See *Circelli v. Keenan Constr.*, 165 Ohio

App.3d 494, 2006-Ohio-949, 847 N.E.2d 39, ¶ 16, citing *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 90, 554 N.E.2d 1292 (denial of a motion for summary judgment is generally not a final, appealable order because it neither determines an action nor prevents a judgment). Having already determined, however, that the trial court's judgment, as a whole, was final and appealable, we are faced with a situation more akin to a trial court granting summary judgment on one of several alternative grounds. In such a situation, Ohio appellate courts often refuse to consider on appeal grounds raised in the trial court, but not decided below. See *Young*, 2007-Ohio-4663, 2007 WL 2633364, at ¶ 22; *Roark*, 2007-Ohio-7049, 2007 WL 4554279, at ¶ 16; *Manda v. Stratton* (Apr. 30, 1999), 11th Dist. No. 98-T-0018, 1999 WL 266613; *Wellman v. Kaiser Engineers, Inc.* (Feb. 13, 1980), 1st Dist. No. C-780799, 1980 WL 352745. In fact, in *Bowen v. Kil-Kare, Inc.* (1992), 63 Ohio St.3d 84, 89, 585 N.E.2d 384, the Supreme Court of Ohio noted that where the trial court declined to consider one of the arguments raised in a motion for summary judgment, but granted the motion for summary judgment solely on the basis of a second argument, the first argument was not properly before the court of appeals. Because the trial court here has not decided either the city's standing to maintain an equal protection challenge or the merits of the city's equal protection argument, we decline to address those issues in the first instance and, instead, remand this matter for the trial court to initially consider and decide them. The state's third assignment of error is therefore overruled.

{¶ 59} In conclusion, we sustain the state's first and second assignments of error, overrule the state's third assignment of error, reverse the judgment of the Franklin County Court of Common Pleas, and remand this matter for further proceedings consistent with this decision and the law.

Judgment reversed
and cause remanded.

BROWN and HENDRICKSON, JJ., concur.

HENDRICKSON, J., of the Twelfth Appellate District, sitting by assignment.